RECEIVED
JAN 30 2026
KELLY L. STEPHENS, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN KLOSTERMAN,
Plaintiff-Appellant,

v.

Case No. 25-4021

CITY OF CINCINNATI, et al.,
Defendants-Appellees.

---

## APPELLANT'S SUPPLEMENTAL NOTICE OF NEW EVIDENCE, MOTION FOR ORDER TO SHOW CAUSE ON PARTIAL SUMMARY JUDGMENT, AND MOTION FOR APPOINTMENT OF SPECIAL MASTER/MEDIATOR FOR SETTLEMENT PROCEEDINGS

---

## I. INTRODUCTION: THE CASE FOR PARTIAL SUMMARY JUDGMENT AND SETTLEMENT

On January 29, 2026—while this appeal is pending—Hamilton County Land Reutilization Corporation ("HCLRC") filed a Reply Brief in state court Case No. A1905588 containing devastating admissions against its own interests. Combined with Receiver Boydston's confession under oath that the sale was "engineered," the fraud element of Appellant's RICO claims is now **established as a matter of law**.

**We know the WHO. We know WHERE. We know WHEN.**

**Discovery will reveal the HOW — and more WHOs.**

The time has come for this Court to: (1) establish fraud through partial summary judgment; (2) appoint a Special Master or Federal Independent Mediator so that any defendant wishing to settle may do so; and (3) set the remaining issue of **DAMAGES for trial only**.

## II. CONTROLLING PRECEDENT: PEOPLE v. TRUMP SUPPORTS PARTIAL SUMMARY JUDGMENT

### A. The Letitia James Model: Fraud Established Before Trial

In *People of the State of New York v. Trump*, Index No. 452564/22, Judge Arthur Engoron granted New York Attorney General Letitia James's motion for **partial summary judgment on the fraud claims in September 2023—before trial began.** The court found that the evidence of fraud was so overwhelming and undisputed that no trial was necessary on the fraud element. The subsequent 11-week trial addressed only remaining claims and the calculation of damages.

**The same standard applies here.** Boydston's confession under oath that the sale was "engineered" eliminates any genuine dispute of material fact on the fraud element. The confessions are in. The 6 federal convictions are in. The only remaining question is **DAMAGES**.

### B. The Undisputed Facts Establishing Fraud

No defendant has disputed—and cannot dispute—the following:
- Boydston confessed under oath that the sale was "engineered" (January 2025 bench trial)
- Joseph Lentine (property manager) is serving 63 months in federal prison for fraud
- Angel Strunk (co-conspirator) faces federal sentencing February 5, 2026
- $3.5 million in properties sold for $800,000 (23% of value)
- $423,169.42 in rents "collected and kept" without court approval (HCLRC's own admission)
- HCLRC coordinated with Boydston "since early 2022" while hiding its role as predetermined purchaser
- "Woefully deficient recordkeeping... intentionally designed to conceal" (HCLRC's own words)

**These are not allegations—these are confessions and convictions. Fraud is established. Only damages remain.**

## III. BOYDSTON'S LAW FIRM ALREADY LOST $32.3 MILLION IN OHIO

This Court should take judicial notice that Defendant Richard Boydston's law firm—**Dentons Bingham Greenebaum LLP**—has already been held liable in Ohio for professional misconduct.

2

**In *RevoLaze, LLC v. Dentons US LLP*, Cuyahoga County Case No. CV-16-869974:**
- A jury awarded $32,262,488.50 against Dentons for legal malpractice
- The Ohio Eighth District Court of Appeals AFFIRMED (April 28, 2022)
- The Ohio Supreme Court DECLINED to hear Dentons' appeal (August 30, 2022)
- This is the LARGEST legal malpractice judgment in Ohio history

**Message to Defendants:** Ohio courts hold Dentons accountable. The Sixth Circuit will too. The settlement table is open. Approach it now—before discovery reveals the full scope of the conspiracy and damages multiply under RICO's treble damage provisions.

## IV. HCLRC'S JANUARY 29, 2026 ADMISSIONS

### A. Admission: HCLRC and Boydston Were Partners

HCLRC states (Reply Brief at 2):

> *"The only 'Receivership business' is ongoing litigation brought by third parties against him. One of the lawsuits was brought by Defendant John Klosterman in federal court."*

**WHO:** HCLRC and Boydston, working together. **WHAT:** Defending the fraudulent sale as "Receivership business." **Discovery will reveal:** How the defense was coordinated and who else participated.

### B. Admission: The Sale Was Pre-Engineered "Since 2021"

HCLRC's own RFP (December 8, 2025):

> *"Since 2021, The Port has worked alongside the City of Cincinnati and the Hamilton County Landbank to acquire and stabilize local housing stock... Together, they purchased a 65-property portfolio out of receivership."*

**WHO:** The City, HCLRC, Boydston, Kelker Williams **WHEN:** "Since 2020"—the same year the receivership was filed. **WHERE:** Cincinnati, through state court proceedings. **Discovery will reveal:** The communications, meetings, and agreements that predated the sham auction.

3

**In *RevoLaze, LLC v. Dentons US LLP*, Cuyahoga County Case No. CV-16-869974:**
- A jury awarded $32,262,488.50 against Dentons for legal malpractice
- The Ohio Eighth District Court of Appeals AFFIRMED (April 28, 2022)
- The Ohio Supreme Court DECLINED to hear Dentons' appeal (August 30, 2022)
- This is the LARGEST legal malpractice judgment in Ohio history

**Message to Defendants:** Ohio courts hold Dentons accountable. The Sixth Circuit will too. The settlement table is open. Approach it now—before discovery reveals the full scope of the conspiracy and damages multiply under RICO's treble damage provisions.

## IV. HCLRC'S JANUARY 29, 2026 ADMISSIONS

### A. Admission: HCLRC and Boydston Were Partners

HCLRC states (Reply Brief at 2):

> *"The only 'Receivership business' is ongoing litigation brought by third parties against him. One of the lawsuits was brought by Defendant John Klosterman in federal court."*

**WHO:** HCLRC and Boydston, working together. **WHAT:** Defending the fraudulent sale as "Receivership business." **Discovery will reveal:** How the defense was coordinated and who else participated.

### B. Admission: The Sale Was Pre-Engineered "Since 2021"

HCLRC's own RFP (December 8, 2025):

> *"Since 2021, The Port has worked alongside the City of Cincinnati and the Hamilton County Landbank to acquire and stabilize local housing stock... Together, they purchased a 65-property portfolio out of receivership."*

**WHO:** The City, HCLRC. Boydston, Kelker Williams **WHEN:** "Since 2020"—the same year the receivership was filed. **WHERE:** Cincinnati, through state court proceedings. **Discovery will reveal:** The communications, meetings, and agreements that predated the sham auction.

3

### C. Admission: Appellant's Motions Had Merit All Along

HCLRC states (Reply Brief at 4-5):

> *"The TSO litigation was the result of the Receiver's failure to supervise its own contractors... the Receiver voluntarily surrendered $423,169.42 to TSO and Lentine without seeking Court approval... woefully deficient recordkeeping."*

**THIS IS EXACTLY WHAT APPELLANT ARGUED FOR THREE YEARS.** Every motion Appellant filed was labeled "vexatious." Now HCLRC uses the same arguments against Boydston. **Discovery will reveal:** Who funded the vexatious litigation proceedings and why.

### D. The $25,000 Witness Tampering Attempt

HCLRC omits a critical fact: Jennifer Donathan of Keller Williams—acting as HCLRC's agent—offered Joseph Lentine **$25,000 to sign a non-disclosure agreement and "go away."**

Lentine refused the bribe. He testified. The conspiracy unraveled.

**This is witness tampering under 18 U.S.C. § 1512(b)(3)—an additional predicate act for RICO liability.** The bench trial awarded Lentine $57,271.48—more than double what Donathan offered to silence him.

### E. The "Free and Clear" Contradiction

HCLRC claims it purchased the properties "free and clear of all liens, claims, charges and encumbrances" (Reply Brief at 6). Yet HCLRC now argues receivership expenses somehow survive the sale.

Boydston himself called this out in his January 12, 2026 filing: *"These positions cannot both be true under the special circumstances of this transaction."*

**The "special circumstances"? The confessed "engineered sale" with pre-arranged pricing. HCLRC knew the sale was fraudulent when it purchased it. It cannot now claim innocence.**

4

### F. The Revolving Door: Proof of Coordination

The conspiracy is not just documented—it is **staffed by the same people**:

- **Kelly Allesee** — Former Assistant City Solicitor, now HCLRC's General Counsel
- **Andrew Garth** — Former City Solicitor who protected Lentine after his FBI arrest ("he was only arrested"), now executive at HCLRC/The Port
- **Jacki Martin** — Assistant City Solicitor who processed the original foreclosure, resigned because the case "was getting out of hand"

**They may be separate organizations on paper, but they sleep in the same bed. The legal billing records of Boydston prove it. The revolving door confirms it.**

### G. HCLRC: Both Plaintiff AND Owner (Honest Services Fraud)

On or about October 2023—*after* acquiring the properties—HCLRC became "substituted plaintiff" in the foreclosure case A1905588 and waited 7 months to close.

**HCLRC was simultaneously the plaintiff foreclosing AND the owner of the properties being foreclosed upon.**

This is not innocent participation. This is **honest services fraud**—using the judicial process to legitimize a predetermined outcome while concealing material interests from the court.

## V. HCLRC'S CASE LAW DELIBERATELY OMITS THE FRAUD ELEMENT

HCLRC cites cases that **explicitly do not apply when fraud is present**. Every case presumes a legitimate receivership:

- **Koeblitz v. Koeblitz** (2021-Ohio-2269) — Kennedy challenged a **legitimate** receivership. Here, Appellant **exposed a fraudulent one**. Inapplicable.

- **Crawford v. Hawes** (2013-Ohio-3173) — Receiver acted in **good faith**; estate dissolved. Here, the receiver **confessed to fraud**. Inapplicable.
- **Dyczkiewycz v. Tremont Ridge** (2012-Ohio-5173) — No assets recovered; no fraud. Here, $3.5M in assets were looted **through fraud**. Inapplicable.
- **Carr v. Acacia Country Club** (2012-Ohio-4723) — Receivership vacated on procedure; **no fraud**. Inapplicable.

**Not one case involves a receiver who confessed to engineering a sale. HCLRC's legal argument is built entirely on inapplicable precedent. This is deliberate deception.**

## VI. THE VEXATIOUS LITIGATOR WEAPON

**HCLRC attacks Appellant as a "vexatious litigator" while simultaneously proving his case:**

- Boydston failed to supervise contractors — APPELLANT SAID THIS
- Lentine took $423,169.42 without approval — APPELLANT SAID THIS
- Recordkeeping was "woefully deficient" — APPELLANT SAID THIS
- Receiver "voluntarily surrendered" funds — APPELLANT SAID THIS

When Appellant—a 76-year-old pro se whistleblower—made these arguments, he was labeled "vexatious." When HCLRC—represented by Dinsmore & Shohl—makes them, it's a legal argument.

**The "vexatious litigator" label was a weapon to silence the whistleblower. Discovery will reveal who funded it, who coordinated it, and why. Appellant alleges the City funded it**

## VII. THE CASE FOR SETTLEMENT AND APPOINTMENT OF MEDIATOR

### A. The Settlement Table Is Open

Defendants face a simple reality:
- Fraud is established through confessions and convictions
- RICO provides for TREBLE DAMAGES

6

- Discovery will expose the full scope of the conspiracy
- Dentons already lost $32.3 million in Ohio for misconduct
- Angel Strunk faces sentencing February 5, 2026
- The conspirators are already turning on each other (see HCLRC v. Boydston)

**Any defendant wishing to settle should have the opportunity to do so before discovery exposes additional misconduct and damages multiply.**

### B. Request for Special Master or Federal Independent Mediator

Given the complexity of this multi-party conspiracy and the likelihood that some defendants will seek settlement while others proceed to trial, Appellant respectfully requests that this Court appoint a **Special Master or Federal Independent Mediator** to:

1. Conduct settlement conferences with any defendant wishing to negotiate;
2. Oversee discovery given defendants' demonstrated pattern of obstruction;
3. Manage the complex multi-party litigation efficiently with the Appellant intimate knowledge of the case;
4. Report to this Court on settlement progress and discovery disputes.

This structure allows willing defendants to resolve their liability while preserving Appellant's right to proceed to trial on **DAMAGES ONLY** against those who refuse to settle.

### VIII. RELIEF REQUESTED

Based on HCLRC's admissions, Boydston's confession, federal convictions, and controlling precedent from *People v. Trump*, Appellant respectfully requests:

5. **ORDER DEFENDANTS TO SHOW CAUSE** within 30 days why partial summary judgment on the fraud element should not be granted;
6. **APPOINT A SPECIAL MASTER OR FEDERAL INDEPENDENT MEDIATOR** to conduct settlement proceedings with any willing defendant and oversee ordered discovery;
7. **REVERSE** the district court's dismissal and remand for proceedings on **DAMAGES ONLY**;

7

8. **ORDER** that on remand, the case be **assigned to a new district judge** given the suspicious timing of dismissal two days after HCLRC's December 8, 2025 admissions in Case A1905588;
9. **GRANT** Appellant's pending Motion to Add HCLRC, Jill Schiller, and Kelly Allesee as RICO defendants;
10. **TAKE JUDICIAL NOTICE** of (a) HCLRC's Reply Brief (Exhibit A), (b) Dentons' $32.3M malpractice loss (on file), (c) Lentine's 63-month sentence (on file), and (d) Boydston's confession (on file);
11. **FIND** that the "vexatious litigator" label was part of the conspiracy and carries no weight in federal proceedings.
12. **ORDER** Production of bank and credit card records immediately after 3 years of denials.

## IX. CONCLUSION

**We know the WHO:** Konza LLC, Boydston, Keller Williams, HCLRC, the City, Lentine, Strunk, and others yet to be identified.
**We know WHERE:** Cincinnati, through corrupted state court proceedings.
**We know the WHEN:** "Since 2020" through the January 2025 "engineered sale" confession and continuing today.
**Discovery will reveal the HOW — and more WHO's.**

The conspirators are turning on each other. Boydston threatens HCLRC. HCLRC attacks Boydston. Lentine sued his partner in crime and won $57,271.48—more than double the $25,000 bribe Jennifer Donathan offered through HCLRC to silence him. Angel Strunk faces federal sentencing February 5, 2026.

Appellant is 76 years old. He spent 35 years rehabilitating 29 historic properties. When they conspired to steal his life's work, he became an FBI whistleblower. His cooperation led to 6 federal convictions.

Now the entities he exposed call him "vexatious." But the confessions are on the record. The convictions are final. The admissions are in their own filings.

**Like Judge Engoron in People v. Trump, this Court should establish fraud as a matter of law. Appoint a Special Master for those who wish to settle. Assign a new judge on remand. And set the only remaining issue—DAMAGES—for trial.**

**We are in Year Five (5) of Case A1905588—and counting, and it is not the Appellant's fault!**

Appellant had a waiting list for his properties—not dilapidated rental units. Not hundreds of building and health code violations. Those came under Lentine's management, reported to Boydston with only mild enforcement by Matt Flannery, Cincinnati building inspector (now retired). Flannery's quid pro quo? He bid on properties with Lentine's guidance.

And then came the confession under oath by Richard Boydston—who, like Trump, thinks he is above the law.

This Court will tell this City, this State, and the United States of America how NOT to run a receivership.

History awaits this Court's ruling.

**When the roots are rotten with fraud, the entire tree must fall.**


Respectfully submitted,

*/s/ John Klosterman*

JOHN KLOSTERMAN, Pro Se Appellant
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

Dated: January 31, 2026

9

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record by Email.

_____
JOHN KLOSTERMAN, Pro Se

**EXHIBIT LIST**

**Exhibit A:** HCLRC's Reply Brief in Support of Motion to Terminate Receivership (Filed January 29, 2026, Hamilton County Case No. A1905588)

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**



D147217380

| | |
|---|---|
| CITY OF CINCINNATI,<br>an Ohio municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN KLOSTERMAN a/k/a<br>JOHN C. KLOSTERMAN a/k/a<br>JOHN CAMPBELL KOSTERMAN, *et al.*,<br><br>Defendants. | Case No. A 1905588<br><br>Judge Wende C. Cross<br><br>Chief Magistrate Judge Anita P. Berding<br><br>ORAL ARGUMENT REQUESTED |

**SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TERMINATE THE RECEIVERSHIP**

Substitute Plaintiff Hamilton County Land Reutilization Corporation ("HCLRC"), by and through counsel, respectfully offers the following Reply Brief in Support of its Motion to Terminate the Receivership (the "Motion"), and in opposition to the Receiver's Memorandum in Opposition to HCLRC's Motion (the "Receiver's Opposition").

**I.   INTRODUCTION**

In its Opposition, the Receiver agrees that HCLRC's Motion accurately states the facts. The Receiver also agrees with HCLRC on the law—that "special circumstances" must exist for HCLRC to become liable for any fees or expenses exceeding funds in the Receivership estate. Nevertheless, the Receiver refuses to terminate the Receivership. Not only that, but the Receiver claims also that HCLRC should become liable for fees and expenses incurred by the Receiver years after any operations that benefit the Receivership.

1


EXHIBIT A

The Receiver concedes that the only "Receivership business" is ongoing litigation brought by third parties against him. One of the lawsuits was brought by Defendant John Klosterman in federal court (the "Klosterman litigation"). Klosterman is an adjudicated vexatious litigator in Hamilton County, and HCLRC bears no responsibility for this litigation. The other lawsuit was brought by the Receiver's former contractors, Tri-State Organization Inc. ("TSO") and Joseph Lentine, for allegedly unpaid contractor's fees and expenses (the "TSO litigation"). That lawsuit arose due to the Receiver's failure to supervise its own contractors, and HCLRC bears no responsibility for that litigation, either.

What the Receiver asks the Court to do is unprecedented. The Receivership fulfilled its stated purpose, having sold the Properties in its care over two years ago. The Receivership has no other source of income. Nevertheless, the Receiver asks to hold the Receivership open indefinitely to finance ongoing litigation that cannot benefit the Receivership estate. Moreover, the Receiver asks the Court to hold HCLRC liable for any expenses incurred during any past, present, or future litigation. The Receivership is not a litigation war-chest – that is not its purpose.

The Receiver essentially asks the Court to convert the Receivership into a fee-generating device, holding HCLRC indefinitely accountable for the Receiver's legal adventures. According to the Receiver, this presents an "equitable" outcome. In support of this argument, the Receiver cites irrelevant facts, such as HCLRC's finances, tax-benefit status, and plans for the Properties. Effectively, the Receiver argues that HCLRC can pay, therefore it should pay. There is no authority supporting the Receiver's arbitrary definition of "equity" and, indeed, the Receiver's proposed solution is profoundly *inequitable*.

The law clearly does not contemplate the Receiver's requested remedy. For the following reasons, the Court should terminate the Receivership and hold HCLRC completely harmless for any past, present, or future fees or expenses claimed by the Receiver.

## II. ARGUMENT

### A. HCLRC Should Not Finance the Klosterman Litigation.

The Klosterman litigation does not justify keeping the Receivership open, and there is no reason why HCLRC should finance this litigation. The Receiver acknowledges that Klosterman is a known "vexatious litigator" and "that there may be no end to litigation," given Klosterman's disregard for court orders and the rules more generally. (Receiver's Opposition at 13). The Receiver also acknowledges that Klosterman has threatened federal litigation against HCLRC and Kelley Allesee. (*Id.* at 6). Indeed, Klosterman has sued them before in the Southern District of Ohio. *See Klosterman v. Sedamsville Cmty. Dev. Grp.*, S.D. Ohio No. 1:20-cv-119, 2020 U.S. Dist. LEXIS 125401 (July 16, 2020). The Receiver complains about "defending at its own and sole expense" Klosterman's repeated attacks; in truth, no one suffers Klosterman's "shenanigans" alone. (*See* Receiver's Opposition at 13). Klosterman's tactics have become an unfortunate reality that can befall anyone even tangentially related to the Receivership—the ten or more defendants in the present Klosterman litigation can surely attest to this. The Receiver has offered no authority suggesting that the Receivership must remain open indefinitely to confront repeated, ongoing litigation from a vexatious litigator.

But even if the Court keeps the Receivership open, there is no authority for holding an innocent party like HCLRC liable for the costs of Klosterman's endless litigation. The only case cited by the Receiver on this point belies personal liability for any costs. (*See* Receiver's Opposition at 7). In *Koeblitz v. Koeblitz*, a domestic relations court appointed a receiver to

3

administer certain assets, subject to a separation agreement between a divorced wife (Kennedy) and her husband (Koeblitz). *Koeblitz v. Koeblitz*, 8th Dist. No. 110106, 2021-Ohio-2269, 2021 Ohio App. LEXIS 2235, ¶¶ 1–2 (July 1, 2021). Kennedy challenged the validity of the receiver's appointment—in effect, collaterally attacking certain administrations of property. *Id.* ¶ 9. Because Kennedy unilaterally undertook the improper action, the court only held her personally liable for the receiver's fees and expenses in defending the action: "the domestic relations court invoked equitable principles in deeming Kennedy solely liable for the amount of attorney fees expended in Dottore's pursuit since Koeblitz bore no fault in initiating the general division action." *Id.* ¶¶ 18–19.

The same reasoning applies here. John Klosterman is a party to this case. If the Receiver thinks its fees in the Klosterman litigation are compensable, it should seek compensation from the person responsible for initiating that litigation—*i.e.*, John Klosterman. The Receiver argues the "equities," but it is hard to imagine something less equitable than holding an innocent party responsible for the actions of a vexatious litigator. Accordingly, the Court should close the Receivership and deny the Receiver's claim for assessing costs and fees against HCLRC.

### B. HCLRC Should Not Finance the TSO Litigation.

HCLRC's Motion established why the Court should not charge the costs of TSO litigation to the Receivership, and why HCLRC cannot become liable for these costs even if charged to the Receivership. By way of brief summary, the TSO litigation was the result of the Receiver's failure to supervise its own contractors, not "necessary to produce, preserve, or protect" any Receivership assets. (Motion at 10–11). For a matter of years, the Receiver proceeded to do business with TSO and Lentine **without a written contract** governing the terms of their compensation. (*Id.*). During that time, the Receiver consented to TSO and Lentine retaining all rents as compensation—the

only substantial source of income for the Receivership. (*Id.*). As a result, the Receiver **voluntarily surrendered $423,169.42** to TSO and Lentine without seeking Court approval. (*Id.*). The Receiver further failed to ensure that this $423,169.42 "payment" to TSO and Lentine would, at the very least, satisfy any claims against the Receivership.

It ultimately required litigation to resolve whether that unsanctioned $423,169.42 "payment" overcompensated or undercompensated Lentine and TSO—a factual issue exacerbated by the lack of written contract and woefully deficient recordkeeping. (*Id.*). This litigation further encumbered the Receivership estate with a judgment in favor of TSO for $57,271.18. (*Id.* at 6). Simply stated, this falls below the standard of care, and the Receiver should not expect compensation for excessive and unnecessary litigation. *See INF Enter. v. Donnellon*, 133 Ohio App. 3d 787, 788–89 (1st Dist, 1999). Even if taxed as a cost of the Receivership, it certainly would not be equitable to make HCLRC liable for the Receiver's litigation misadventure.

The Receiver's Opposition does not address these facts at all. Instead, the Receiver suggests that HCLRC and its predecessor (the City of Cincinnati) "waived" their arguments when they did not object to any of the Receiver's monthly reports. (Receiver's Opposition at 12–13). But even if true, this "waiver" argument only applies to whether the litigation qualifies as a Receivership expense. *See Grise v. Warrick*, 91 N.E.2d 287, 1949 Ohio App. LEXIS 789, at *6–8 (2d Dist.). It has no relevance to determining whether "special circumstances" exist or whether the Court can equitably make HCLRC liable for any Receivership expense. Indeed, it would be profoundly *in*equitable to make HCLRC liable for the TSO litigation.

Moreover, the Receiver's reports fail to indicate that the Receiver voluntarily relinquished $423,169.42 in Receivership income to TSO without an accounting or Court approval. Even if they had, those reports contain facially inappropriate charges (for example, charging TSO's payroll

5

taxes to the Receivership),[1] and filing those charges as "expenses" falls well below the Receiver's standard of care. The Receiver cannot equitably blame HCLRC or the City of Cincinnati for its own failure to administer the Properties and account for the rents or expenses.

The Receiver appears to acknowledge its issues supervising and accounting for Lentine and TSO's expenses, as evidenced by the Receiver segregating its own applications for compensation from Lentine and TSO's. Of the $1,474,017 sale price, the Receiver already allocated $499,717.76 for its own fees and expenses. (*See* Motion at 5). The Court approved and the Receiver obtained this $499,717.76 for his fees and expenses. (*Id.*). As a matter of law, the Receiver's fees and expenses include "fees for professionals assisting the receivership," which includes any claimed fees by Lentine and TSO. R.C. 2735.04(C). The Receiver could and should have applied for any expected fees owed to TSO and Lentine through the sale. Instead, the Receiver filed a completely different fee application on behalf of TSO and Lentine, acknowledging disputable issues in connection with their claims for payment. (*See* Motion by Receiver for Approval of Fees and Expenses of Tristate Organization, Inc. Through November 30, 2022).

In separating its own fees and expenses from the "professionals assisting the receivership," the Receiver effectively disclaimed responsibility for evaluating Lentine and TSO's claims for compensation. The Receiver burdened the estate with confronting these claims after disposing of the Receivership Properties, including the risk that the Receivership would not have enough assets to satisfy Lentine and TSO's claims—the situation at present. The Receiver accuses HCLRC of leaving him high and dry on the TSO litigation, but in reality the Receiver had numerous opportunities to assess those claims prior to selling the Receivership Properties, which HCLRC purchased free and clear of all liens, claims, and interests. It would be profoundly inequitable to

---

[1] For further examples, see HCLRC's Memorandum in Opposition to Tri-State Organization, Inc. and Joseph Lentine's Application for Payment of Costs, Expenses, and Fees, at 3–6.

make HCLRC cover litigation expenses that the Receiver could have easily avoided, especially expenses that arose after the "free and clear" sale to which HCLRC agreed.

HCLRC already has expended tremendous resources defending the TSO litigation. The Receiver set in motion over two years of litigation[2] to decide issues that, as explained above, never should have arisen. The Receiver argues the "equities," but it cannot be equitable to burden HCLRC, who purchased the Properties free and clear, with the cost of the Receiver's ongoing litigation misadventure. Accordingly, the Court should not approve taxing the TSO litigation as a cost of the Receivership, nor should the Court find HCLRC liable for this expense.

### C. HCLRC Did Not Obtain Any Disproportionate "Benefit."

The Receiver suggests the HCLRC received some inordinate "benefit" that justifies liability for the Receiver's fees, but this argument also fails. HCLRC did not "benefit[] by entering the case," (*see* Receiver's Opposition at 14), it entered the case as an arms-length buyer of the Properties. As acknowledged by the Receiver, HCLRC "seeks to identify, restore and redevelop real properties; to provide development financing through issuance of revenue bonds; expand home ownership." (*Id.* at 2). HCLRC does not "benefit" or "profit" from an acquiring real estate such as the Receivership Properties; HCLRC acquires property in accordance with its mission, for the benefit of the public and to restore distressed properties to tax-productive uses. HCLRC entered this case to purchase the distressed Receivership Properties, and it received those Properties pursuant to the purchase agreement executed with the Receiver. Any insinuation that HCLRC "benefited" beyond its role as a purchaser completely lacks merit.

For the same reason, the Receiver's extended speculations about HCLRC's financial condition are irrelevant. The Receiver repeatedly invokes numerous irrelevant facts and theories,

---

[2] The Receiver has indicated that it plans to appeal the Magistrate's Decision and the Court's Final Entry adopting the same, and the TSO litigation apparently remains open and ongoing.

such as HCLRC's tax-exemption for transfers of distressed real estate, that HCLRC took an assignment of the City's judgment against Klosterman, and the source of HCLRC's funds for the purchase price. (Receiver's Opposition at 9–10). But none of these facts bear on the "special circumstances" necessary to create liability, nor do these facts amount to a "benefit" provided by the Receivership.

None of the Receiver's cited cases support the existence of "special circumstances" here. The "special circumstances" cases cited by the Receiver involve highly irregular receiverships that, for one reason or another, could not satisfy *any* of the respective receivers' fees and expenses out of the receivership estate.[3] *Crawford v. Hawes* involved a receiver administering a bar and restaurant that dissolved during the pendency of the receivership. *Crawford v. Hawes*, 2013-Ohio-3173, 995 N.E.2d 966, ¶ 14 (2d Dist.) ("The Court believes that the most equitable solution would be to permit the Receiver to deduct his expenses from the corpus of the receivership. Unfortunately, this is not a viable solution because the corpus no longer exists."). In *Dyczkiewycz v. Tremont Ridge Phase 1 L.P.*, plaintiffs moved to appoint a receiver to pursue entities without any assets. *Dyczkiewycz v. Tremont Ridge Phase 1 L.P.*, 2012-Ohio-5173, 981 N.E.2d 941, ¶ 41 (8th Dist.) ("In this case, there were no assets recovered; therefore, the receiver's fees could not be paid out of the collection."). *Carr v. Acacia Country Club Co.* is the only case cited by the Receiver that assesses fees solely against "the party seeking a receiver," but that case involved a vacated receivership order; without a receivership, there was no receivership estate to satisfy the receiver's fees and expenses. *Carr v. Acacia Country Club Co.*, 8th Dist. No. 97989, 2012-Ohio-4723, 2012 Ohio App. LEXIS 4134, ¶¶ 21, 30 (Oct. 11, 2012).

---

[3] With the exception of *Koeblitz v. Koeblitz*, discussed above.

8

By contrast, the Receiver here already obtained $499,717.76 in fees from the Receivership estate. Now, after the Properties have been sold to HCLRC free and clear of all liens, claims and interests, the Receiver reassesses the transaction and asserts that HRCLC obtained some kind of "benefit" exceeding the terms of sale—terms that the Receiver itself negotiated. There is nothing "equitable" about the Receiver's approach, and it has no support in the law.

### III. CONCLUSION

For the foregoing reasons, the Court should order the Receiver to file a final report and enter an Order terminating the Receivership and discharging the Receiver.

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County
Land Reutilization Corporation*